THORNAL, Justice.
By petition for certiorari we have for review an order of the Florida Public Service Commission which requires the mutual honoring of tickets by common carriers of passengers.
We must decide whether the Commission has jurisdiction to promulgate the rule, and, if so, whether, in the instant case, it has met the essential requirements of law.
Greyhound Lines, Inc., and Tamiami Trail Tours, Inc., are common carriers of passengers in Florida. They render a competitive service in some areas. In others they are noncompetitive. The respondent Commission regulates their intrastate operations. From 1938 until this dispute had its inception in 1959, the two carriers, by agreement, mutually honored each other’s bus tickets. This simply meant that a passenger holding a ticket issued by one, could use it for transportation by the other between competitive points of travel. Under the voluntary arrangement it was not necessary to secure the issuance of a new ticket or obtain permission from either carrier. On November 4, 1959, after Tamiami had obtained a certificate to compete with Greyhound between Jacksonville and Miami, via Orlando, Greyhound announced discontinuance of ticket honoring for major points between Jacksonville, Miami and St. Petersburg. As of June 15, 1961, the approximate time when Tamiami commenced its Jacksonville-Orlando-Miami operation, Greyhound formally announced that it would no longer pay Tamiami for Greyhound tickets “lifted” between these points. At this point the “ticket-honoring” arrange *3 ment between the two carriers appears to have collapsed.
On February 6, 1963, the respondent Commission, by its order #5652, directed the two carriers to show cause why they were not complying with then Rule 310-5.47 which merely required an interchange of passengers. This order recited that “this Commission has received numerous complaints from the traveling public” that the carriers were not honoring each other’s tickets. On May 23, 1963, by its - Order #5775, the respondent decided that its then existing rule did not cover the problem. On the same day, May 23, 1963, again reciting “numerous complaints,” by its Order #5776, respondent initiated an investigation to determine whether a rule should be adopted to require the carriers to honor each other’s tickets. The carriers were ordered to supply any available pertinent information. Three years and five months later, on October 24, 1966, after numerous hearings and arguments, the respondent, entered it’s order #7128-B which amends its Rule 310-5.47 to read as follows:
“‘1(a) Each regular common carrier of passengers shall interchange passengers with other like regular common carriers at points served by both and shall honor-a passenger ticket issued by another such carrier and shall be compensated by such carrier for honoring its tickets on the terms and conditions as hereinafter prescribed.
“ ‘ (b) The word “interchange” as used hereinabove shall mean that each regular common carrier of passengers shall honor passenger tickets of all other such carriers between all points in Florida within the authority granted by the Commission to the honoring carrier.
“ ‘(c) All regular common carriers of passengers shall pay the carrier that honors such tickets when such ticket is submitted to the selling carrier in interline billing.
“ ‘(d) Failure to settle and pay interline accounts after reasonable demand will subject the offending carrier to citation by the Commission and imposition of such penalties as may be authorized by law and warranted by the facts.’ ”
By order #7515, entered March 16, 1967, the respondent denied Greyhound’s petition for reconsideration of the last numbered order.
By the instant petition we have for review orders numbered 7128-B and 7515. The petitioner contends that the respondent had no jurisdiction to enter the orders, and even if it had the power, it has failed to exercise it in accord with the essential requirements of the law.
At the outset, it appears to us that the instant matter is more of a contest for customers between two competing carriers than an answer to any widespread public demand. The latter element may exist but it is not revealed by the record. Indeed, at an early hearing, the attorney for the Commission announced, “Mr. Chairman, this whole business started with a complaint of one bus company against another that they were not following the rule in the book.” We do not hold that aspects of public convenience and necessity could not be involved in the current situation. We simply note that this record fails to present evidence of a widespread public demand for the service which has been required.
In response to Greyhound’s contention that the Commission lacks jurisdiction in the premises, we hold that upon a proper showing of public necessity and convenience, the respondent Commission has the power to require the mutual honoring of passenger tickets. Fla.Const. Art. XVI, § 30, F.S.A., grants to the Legislature “full power to pass laws for the correction of abuses” and otherwise to regulate the charges and services of common carriers. By Fla.Stat. Ch. 323, F.S.A., the Auto Transportation Act, and other stat *4 utes, the Legislature has undertaken to exercise this constitutional function, largely through the medium of the respondent Commission. By Fla.Stat. § 323.07, F.S.A., the respondent is granted broad powers to fix rates, charges, classifications, services and operations of intrastate common carriers. When an auto transportation company commits its property to the public service as a condition to obtaining a certificate to operate, it subjects itself to the state’s power to regulate in all matters affecting the company’s relationship with the public. Admittedly, such regulations must be non-confiscatory and founded in public need and convenience. However, the public welfare demands that the state’s supervisory and regulatory powers over monopolies be broad and comprehensive. Fogarty Bros. Transfer, Inc. v. Boyd, 109 So.2d 883 (Fla.1959). This logically follows from the proposition that every holder of a certificate of convenience and necessity issued by respondent enjoys a protected public monopoly or at least a guaranteed right to participate in all described transportation business accruing along its routes. This, of course, is a valuable right which cannot be prejudiced or divested arbitrarily. However, in all cases, when a paramount public interest is demonstrated, it must prevail over the claims of the franchise holder who has committed his property to the public service as a condition to receiving the advantages of a monopoly. Tamiami Trail Tours, Inc. v. Railroad Commission, 120 Fla. 371, 163 So. 1 (1935); Fogarty Bros. Transfer, Inc. v. Boyd, supra; Tampa Electric Co. v. Withlacoochee River Elec. Coop., 122 So.2d 471 (Fla.1960); Greyhound Corporation, etc. v. Carter, 131 So.2d 735 (Fla.1961). We have held, for example, that even though a particular aspect of a required service is unprofitable, it may nevertheless be mandated in the public interest if it does not produce losses which have a substantial adverse effect on the overall operation of the carrier. Butler v. Carter, 123 So.2d 313 (Fla.1960); Greyhound Corporation, etc. v. Carter, supra. We have the view that a rule is permissible which requires the mutual honoring of passenger tickets with adequate requirements for payment by the issuing carrier and a reasonable allowance to that carrier to cover the expense of issuance. An almost identical situation was before the Supreme Court of Oklahoma in Greyhound Lines, Inc. v. Corporation Commission, 430 P.2d 1 (Okl.1967). The power of the state’s public service commission to impose this identical type of regulation was expressly recognized. Similarly, a three-judge federal court has recognized the power of the Interstate Commerce Commission to insist on performance of a ticket honoring arrangement in Greyhound Lines, Inc. v. United States, 268 F.Supp. 746 (N.D.Ill.1967).
Having found that the Commission has jurisdiction in the premises, we must next decide whether, in exercising it, they have met the essential requirements of law. It should be recalled that the instant record suggests that the matter presented is primarily a contest between two certificated competing carriers. The original show cause order recited that it was inspired by “numerous complaints” of the traveling public. Greyhound has insisted throughout that such complaints, if any, are minimal. It urges an arrangement allowing permissive or conditional honoring of tickets. Greyhound desires a requirement that as a condition to use of a ticket on a carrier other than the issuing line, the passenger should be required to present it to an agent of the latter and have it “validated” or approved for use over the line of a competitor. Obviously, if this requirement were imposed, the inconvenience to the passenger would often offset the convenience intended by the honoring requirement.
 Our study of the instant record, however, convinces that the orders of the respondent Commission are critically lacking in vitally essential findings and competent evidentiary support. Despite some indications to the contrary, Tamiami Trail Tours, Inc. v. King, 143 So.2d 313 (Fla.1962), we have rather consistently held that *5 formal orders of the respondent Commission should contain specific findings of fact upon which the ultimate conclusion is founded. This is no mere technical or perfunctory requirement. In such matters this Court is not the fact finding body. The Commission is. In order that we might be informed regarding the factual basis on which the Commission relies it is essential that the order enlighten us with at least a succinct summarization of the respondent’s views on the factual issues. Otherwise, it would be necessary for us to explore the record and formulate our own conclusions from the evidentiary discoveries which impress us at the reviewing level. Obviously, this would be inconsistent with the presumed validity of the Commission’s orders, Fla.Stat. § 350.12(2) (m), F.S.A., and our traditional acceptance of the findings of administrative and quasi-judicial agencies. Central Truck Lines, Inc. v. King, 146 So.2d 370 (Fla.1962); Polar Ice Cream & Creamery Co. v. Andrews, 150 So.2d 504 (1 Fla.App.1963); Ryder Truck Lines, Inc. v. King, 155 So.2d 540 (Fla.1963); Village of North Palm Beach v. Mason, 167 So.2d 721 (Fla.1964). The holding is not novel or of recent vintage. Leonard Bros. Transfer & Storage Co. v. Douglass, 159 Fla. 510, 32 So.2d 156 (1947). This holding is supported by the Administrative Procedure Act, Fla.Stat. § 120.25(8) (1967), F.S.A., and, respondent’s own Rule 3.10-2.992(5). See Florida Administrative Code, Vol. III, Ch. 310.
 In the application of this rule, it isn’t sufficient for the Commission merely to conclude that public convenience and necessity require the order. It should go further and preface this conclusion with the factual findings on which it bases its ultimate judgment. An exhaustive detailing of the evidence is not required. It is necessary that the Commission itself examine the evidence, reconcile conflicts, if any, decide credibility of witnesses and formulate the factual conclusions upon which its decision is founded.
The orders here under attack were totally devoid of any factual findings. The respondent concludes that the public convenience and necessity justify its order but it fails to tell us how or why. In its initial show cause order on February 6, 1963, it mentions “numerous complaints” regarding the service, but even this nebulous recitation is absent from the order under review. Indeed the only record support for the original assertion of “complaints” is the mere ipse dixit of the head of the Commission’s Transportation Department who stated that “numerous complaints” had been received. He could not seem to identify them as to approximate number, nature, locale or whether oral or written. Greyhound’s motion to obtain this information was twice denied. It should have been granted if respondent was relying on the public demand as a basis for its order requiring the service.
We therefore conclude that while the Commission has the jurisdiction to act in the premises, the proceedings here under attack do not comport with the essential requirements of the law. The orders under review are quashed and the matter is remanded to the respondent Commission for further proceedings in accordance with this opinion.
It is so ordered.
CALDWELL, C. J., and DREW, J., and WHITE, Circuit Judge (Retired), concur.
ERVIN, J., dissents.