RAWLS, Judge.
Petitioner, Intercoastal Biologicals, Inc., seeks review of an order entered by the Department of Health and Rehabilitative Services, Division of Health, denying In-tercoastal a license to operate a clinical laboratory in Gainesville, Florida. Petitioner’s primary points are: 1. The subject order is not supported by competent substantial evidence, and 2. the order is outside the scope of authority of the Division of Health.
Intercoastal[1] is engaged in the plas-mapheresis [2] business at its clinical lab *471 oratories located in Orlando and Gaines-ville, Florida. The State of Florida through the Division of Health regulates by a licensing process the operation of clinical laboratories in this State. Those laboratories conducting the plasmapheresis process are subject to the regulations promulgated for the operation of general clinical laboratories.[3] In March of 1969 Inter-coastal, without a qualified director or the required license to operate a clinical laboratory from the State of Florida,[4] opened its plasmapheresis laboratory in Gaines-ville. Intercoastal was duly notified by the Division of Health that a license was required for the operation of the Gainesville facility.[5]
At this time the applicable regulations of the Division of Health required as a prerequisite to licensing[6] that a clinical laboratory have a qualified director and that the operation of the facility not violate State laws or rules and regulations. In-tercoastal employed a medical doctor practicing in Winter Haven, Florida, as co-director of its Gainesville laboratory and promptly filed an application for a license for the Gainesville facility.[7] The application was denied by the Division of Health on August 27, 1969, on the basis that the unauthorized practice of medicine was being conducted at the Gainesville facility in violation of Florida Statutes § 458.15(2) (a) and § 458.13(1), F.S.A., and Section 170E-ll.il (3), Florida Administrative Code.[8] Intercoastal requested a hearing on the propriety of the denial and in March and April of 1970 five days of evidentiary testimony was heard by the Division’s own specially-appointed hearing examiner.
The consensual view of several medical experts impressively qualified in the field of plasmapheresis was that plasmapheresis is a medical process which can be, and usually is, delegated to nonlicensed physician personnel. The customary supervision of the plasmapheresis process consists of a physician training the personnel, setting up a routine and following through by checking the routine and being available for any necessary consultation. These experts painted a picture of plasmapheresis being conducted daily by nonphysicians on hundreds of donors in large hospitals and blood banks with only an occasional visit to the facility by a licensed medical doctor. The expert evidence produced at the hearing also reveals that medical science may now be reevaluating the plasmapheresis process and its accompanying dangers. The modern trend may well be toward having the process conducted only by a licensed physician or under his immediate supervision.
The operation of the Gainesville laboratory was thoroughly examined. This review revealed that the medical doctor director from Winter Haven visited the laboratory several times a month, but that he did not train the personnel or review the individual donor’s records. The supervisor of the laboratory is a medical laboratory supervisor licensed by the State of Florida, but he spends only approximately one day a week at the Gainesville facility. The day to day operation of the laboratory *472 is left in the hands of a technician, several nurses, and a Mexican doctor who is not licensed to practice in the State of Florida and who has a problem understanding the English language.
After hearing all of the medical experts and the various employees of Intercoastal’s Gainesville facility, the hearing examiner filed his recommendations to the Division of Health on June 23, 1970 concluding that the process of plasmapheresis could be delegated by a doctor to nonphysician personnel; the delegation of the plasmapheresis process at Intercoastal’s Gainesville laboratory was reasonable and did not constitute the unauthorized practice of medicine. Despite these findings, on December 4, 1970 the Division of Health issued its final order denying Intercoastal a license to operate a clinical laboratory at its Gainesville facility on the basis that the delegation of the plasmapheresis process as conducted at the laboratory in question was the unauthorized practice of medicine and thus violated Florida Statute § 458.15(2) (a) and Section 170E-ll.il (3) [9] of the Florida Administrative Code. It is from this order that Intercoastal brings the instant petition for writ of certiorari.
The Division’s denial to Intercoastal of a license for its Gainesville laboratory is bottomed on the contention that the delegation of the plasmapheresis process at that specific facility constitutes the unauthorized practice of medicine. We have searched diligently through the laws of this State and the regulations of the Division of Health and have failed to find any legal authority which empowers the Division of Health to determine what acts constitute the unauthorized practice of medicine.[10] To the contrary, the Division’s own regulations authorize the part-time and infrequent supervision of a clinical laboratory by its physician director.[11] The consensual opinion of the medical experts was to the accord that the plasmapheresis process could be, and usually is, delegated to non-physician personnel. The Division’s own hearing examiner who heard all of the witnesses found that the delegation of the plasmapheresis process at Intercoastal’s Gainesville laboratory was reasonable and lawful. In light of such overwhelming evidence, we must conclude that there is no substantial and competent evidence to support the Division of Health’s order denying Intercoastal’s Gainesville laboratory a license.[12]
We are not unmindful of the limited expert testimony which indicates that the future may reveal that plasmapheresis is a dangerous process which should be performed only by, or under the close supervision of, a licensed physician. We emphasize that the Division of Health has not promulgated rules or regulations directed specifically to the process of plasmaphere-sis. Its rules and regulations concern the operation of clinical laboratories, and the evidence in this record reflects that petitioner has complied with said rules and regulations. We pretermit any discussion of the Division of Health’s authority to lawfully adopt more stringent rules applicable solely to the plasmapheresis process, for such has not been done.
Certiorari is granted and the order of the Division of Health here reviewed is quashed, with directions that the Division of Health issue said license.
CARROLL, DONALD K., Acting C. J., and WIGGINTON, J., concur.

. Intercoastal is a totally owned subsidiary of North American Biologicals, Inc., which operates several plasmapheresis laboratories in various states.

. Plasmapheresis is a process whereby whole blood is drawn from a donor and placed in a centrifuge machine which separates the plasma from the red cells. Once separated, the plasma is retained and the red cells are placed in a saline solution and returned to the donor.

. F.S. Cli. 483, F.S.A.; and 170E-11, F. A.O. (Florida Administrative Code), superseded by 10D-41, F.A.C.

. F.S. § 483.23(1), F.S.A.; 170E-11.10 and 170E-ll.il (3), superseded by 10D-41.10 and 100-41.11(3), F.A.C.

. Intercoastal apparently thought it could operate the Gainesville laboratory under the same license it had previously obtained for its Orlando laboratory even though 170E-11.11(4), F.A.C., specifically required a separate license for each laboratory maintained on separate premises. (170E-ll.il (4), F.A.C., superseded by 10D-41.1H4), F.A.C.)

. 170E-11.10 and 170E-ll.il (3), F.A.C., superseded by 10D — 41.10 and 10D-41.il (3), F.A.C.

. “A director shall meet one of the following requirements:
“(1) He is a licensed practitioner of the healing arts.” 170E-11.03, F.A.C., superseded by 10D-41.03, F.A.C.

. Superseded by 10D-41.il (3), F.A.C.

. Superseded by 10D-41.11(3), F.A.C.

. An administrative agency is a creature of the statutes and is empowered only with the authority given it by its enabling statute. Forehand v. Board of Public Instruction, 166 So.2d 668 (1 Fla.App.1964) ; and Board of County Commissioners of Dade County v. State ex rel. Frazier, 111 So.2d 476 (3 Fla.App.1959).

. “The director serves the laboratory full time or on a regular part-time basis and he is readily available for personal or telephone consultations.” (Emjjhasis supplied.) 17012-11.12(1), F.A.C., superseded by 10D-41.12(1), F.A.C.

. De Groot v. Sheffield, 95 So.2d 912 (Fla.1967).